```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA
```

JOHNNY RAY LAWSON,              )
                                )
            Plaintiff,           )
                                )
v.                               )   Case No. CIV-14-088-RAW-KEW
                                )
CAROLYN W. COLVIN, Acting        )
Commissioner of Social           )
Security Administration,         )
                                )
            Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Johnny Ray Lawson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 6, 1962 and was 50 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a factory live chicken de-boner, forklift operator, and sanitation worker.

3

Claimant alleges an inability to work beginning March 12, 2009 due to limitations resulting from arthritic back pain, anxiety with panic attacks, and depression.

## Procedural History

On October 19, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On October 25, 2010, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge Edmund C. Werre ("ALJ") on September 20, 2012 in Tulsa, Oklahoma. The ALJ issued an unfavorable decision on October 9, 2012. On January 9, 2014, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform his past relevant work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in failing to provide specific and legitimate reasons to reject the opinions of Claimant's treating physicians. Claimant also asserts that this case should be remanded because a subsequent application was granted and Claimant was found disabled the day after the decision by the ALJ in this case was entered.

**Consideration of Claimant's Treating Physicians' Opinions**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease, hypertension, schizoaffective disorder, panic disorder, and continuing cannabis dependency. (Tr. 11). He found Claimant could perform his past relevant work as a chicken de-boner. (Tr. 19). The ALJ also determined Claimant could perform light work except he could lift no more than 20 pounds occasionally or lift/carry 10 pounds frequently, stand/walk for 6 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday, and engage in no more than occasional stooping. Mentally, the ALJ found Claimant was able to understand, remember, and carry out simple instructions consistent with unskilled work that is repetitive and routine in nature and was able to relate and interact with co-workers and supervisors on a work-related basis only, with no or minimal interaction with the general public. Claimant could adapt to a work situation with

5

these limitations and his medications would not preclude him from remaining reasonably alert to perform the required functions presented in a work setting. (Tr. 13).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of merchandise marker and tube operator, both of which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 20). Based upon these findings, the ALJ concluded Claimant was not disabled from July 22, 2010 through the date of the decision. (Tr. 21).

Claimant contends the ALJ failed to properly evaluate the opinions provided by his treating physicians. Claimant suffered a herniated disc at L3-L4 in 2007 and saw Dr. Jeffrey Jenkins for treatment. Dr. Jenkins diagnosed radiculopathy and prescribed medication. (Tr. 237). On December 28, 2008, Claimant experienced back pain that radiated to his feet. Dr. Jenkins diagnosed lumbago and prescribed medication. (Tr. 233). On March 13, 2009, Dr. Jenkins observed muscle spasms in Claimant's back and prescribed medication. He recommended that he see an orthopedist or neurologist. (Tr. 233). On March 23, 2009, Claimant wanted to return to work. Dr. Jenkins noted Claimant's increased depression and suicidal thoughts. Dr. Jenkins released him to return to work

with the restriction that he could not run a stand up forklift. (Tr. 228). When he produced the letter with this restriction, he was laid off and lost his insurance. (Tr. 282).

On June 7, 2010, Dr. Jeffrey Jenkins prepared a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on Claimant. He found Claimant could occasionally lift 10 pounds, stand/walk for 1-2 hours at a time for a total of less than 2 hours in an 8 hour workday, and sit for more than 2 hours at a time for a total of 6 hours or more in an 8 hour workday. (Tr. 392). Dr. Jenkins also stated Claimant suffered from paranoia and other mixed mood disturbances including anger, irritability, suspicion, depression, sadness, and anxiety as of the last time he saw Claimant in 2009. He believed Claimant was heading toward psychological in patient care. On average, Dr. Jenkins believed Claimant's impairments or treatment would cause him to be absent from work three or more times per month, primarily caused by his back pain and psychological conditions. (Tr. 393).

The ALJ acknowledged Dr. Jenkins' treatment from 2007 through 2009 but found no record of treatment thereafter. He noted Dr. Jenkins' restriction of Claimant to sedentary work but because he had not attended Claimant since March of 2009, the ALJ stated he could not give the opinion much weight. (Tr. 18).

7

The ALJ is required to give a treating physician's opinion controlling weight, unless circumstances justify giving it a lesser weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion

8

and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted). Moreover, the ALJ is required to consider all medical opinions contained in the record, including evidence from a previously adjudicated period. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ failed to indicate that Claimant's condition in relation to his ability to stand for prolonged periods had changed significantly since Dr. Jenkins' last examination in 2009. As a result, he failed in his responsibility to provide specific, legitimate reasons for rejecting this treating physician's opinion on limitations. On remand, the ALJ shall

9

consider Dr. Jenkins' opinions.

On September 14, 2012, Dr. Vanessa Werlla provided a Mental Residual Functional Capacity Assessment form on Claimant's mental condition. She found Claimant was markedly limited in 12 areas of mental functioning and moderately limited in an additional 8 areas. (Tr. 428-29). The ALJ gave Dr. Werlla's opinions "little weight" because the "were not consistent with other psychological records." (Tr. 18). The ALJ does not identify the conflicting records. Moreover, he indicates Claimant only saw Dr. Werlla in 2012. Id. This is not correct as the medical record indicates Dr. Werlla attended Claimant in 2011. (Tr. 374, 389, 404, 406). This calls into question whether the ALJ reviewed the totality of Dr. Werlla's treatment records. Again, the ALJ failed to provide the analysis required by Watkins before the rejection of a treating physician's opinion can be justified. On remand, the ALJ shall reconsider Dr. Werlla's opinion and provide specific, legitimate reasons for rejecting them, including references to the specific conflicting medical records.

On December 1, 2010, Dr. Kenny A. Paris provided a consultative mental health evaluation of Claimant. (Tr. 304-08). The ALJ gave this opinion "great weight" but appears to have failed to recognize the portions of Dr. Paris' opinion which conflicted

with his findings of non-disability, including findings that Claimant's memory skills were below normal and that he had problems with persistence and pace. He also recognized that a combination of Claimant's mental and physical impairments would lead to greater impairment and made him "less likely to be successful in a job setting." (Tr. 307). The ALJ appears to have inappropriately accepted the portions of Dr. Paris' report which supported a finding of non-disability while ignoring the portions which did not. Hage v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). On remand, the ALJ shall consider the totality of Dr. Paris' report and determine whether it affects the RFC assessment.

Claimant also contends the ALJ failed to adequately consider his low GAF scores which varied widely throughout the medical record. In 2009, Claimant's GAF range was 40 and 47. (Tr. 270, 263). In 2010, his GAF scores were 50 and 51. (Tr. 285, 307). In 2011, Claimant's GAF scores were assessed as 42 and 32. (Tr. 360, 365, 351).

Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116,

11

1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF between 31 and 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." A GAF between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to

discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). However, in this case, the ALJ failed to discuss the reason he accepted the higher GAFs while failing to recognize the many lower GAFs. On remand, the ALJ shall at least consider the totality of the GAF testing Claimant has undergone and provide a consistent rationale for accepting or rejecting the findings.

**Effect of Subsequent Application and Award of Benefits**

Claimant states that he filed a subsequent application for benefits in relation to which he received a fully favorable decision. Claimant contends as an alternative argument should this Court not remand the ALJ's decision on the merits that a remand is warranted to consider the whether Claimant's disability extended to the time period covered by the prior application considered in this appeal. Since this case is remanded on the merits, this issue is effectively moot. However, the ALJ shall certainly consider on remand whether the impairments and conditions which gave rise to

13

the subsequent favorable decision existed and extended to the period covered by the subject application.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 22nd day of April, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE